**NOBLE, Plaintiff, v. McALLISTER DAIRY FARMS, INC., Defendant.**

Common Pleas Court, Trumbull County.

No. 59201. Decided September 18, 1952.

J. Don Campbell, George Buchwalter, Warren, for plaintiff. Lewis L. Guarnieri, Warren, for defendant.

**OPINION**

By McLAIN, J.

A motion for a new trial was filed in this case by the plaintiff herein setting forth, among other reasons, the claimed misconduct of the prevailing party, McAllister Dairy Farms, Inc., through its treasurer, Mrs. Temple McAllister. The motion is accompanied by affidavits. Affidavits were also filed by the defendant.

These affidavits differ somewhat in their contents. However, certain facts pertinent to the inquiry are not in dispute. Mrs. McAllister sat among the spectators during the progress of the trial and engaged in conversation with the wife of one of the jurors and was introduced to the juror by her. This fact is supported by both the affidavit of the wife of the juror and also that of Mrs. McAllister, although it is stated therein that the conversation was not in reference to the trial.

When the jury was recalled after several hours deliberation for the purpose of inquiry by the court as to whether or not there was possibility of an agreement, Mrs. McAllister was seated beside a juror who had been excused the previous day because of illness and Mrs. McAllister remarked that a corsage worn by a member of the panel was beautiful.

The former juror explained that the corsages were made by the member of the panel wearing the same, whereupon, Mrs. McAllister inquired about the price and stated she would like to place an order for some.

As the jury was leaving the box for an intermission, Mrs. James introduced Mrs. McAllister to the juror who made the corsages. The affidavits are conflicting as to the length of the conversation among the three women.

Exactly what was said is not clear, although the court is convinced that some conversation did take place, and that the introduction under all of the circumstances, could have been for no possible purpose other than to acquaint Mrs. McAllister with the juror who made the corsages for the evident purpose of ordering some. In any event, the conversation was interrupted by the seated juror stating that she could not talk to Mrs. McAllister at that time.

Unfortunately, the Trumbull County Court House does not provide facilities for keeping a jury separate from others during intermissions. Instructions designed to safeguard the purity of trial and insure the utmost fairness and impartiality are given constantly. Every possible effort is made to prevent any extraneous influence being exerted on jurors.

When the court declared an intermission for the jury of fifteen minutes, it was expressly stated that the jurors, being in deliberation, were not to engage in conversation with any one upon any subject whatsoever, and at the end of the intermission, return to the jury room for further consideration of the issues.

If this jury had been in the jury room and Mrs. McAllister entered for the purpose of being introduced to one of the jurors during the deliberation, it could not be argued that such an incident was not of grave consequence. This jury was entitled to the same safeguards and protection during the intermission, and the legal effect of the incident is no different.

This conduct on the part of the parties to this introduction and the conversation surrounding it, was a plain and blatant effrontery to a court of justice.

The law is well settled both elsewhere and in Ohio that misconduct of a juror must be shown to be prejudicial before a new trial is granted. However, the law is equally well

■ settled that in the case of misconduct of the prevailing party, it is not essential that it be shown to have influenced the verdict. The reason for this rule is apparent. It would be unjust to penalize a prevailing party because of some improper conduct of a juror over which the party had no control unless it was in fact prejudicial.

However, the prevailing party itself, has control over its own actions and cannot engage in improper conduct with impunity, regardless of whether or not it in fact influenced the verdict. **Railroad v. Porter, 32 Oh St 333.**

That the right of litigants to have an impartial and unbiased jury is a substantial right cannot be questioned. Any attempt by a party to a law suit to tamper with or engage in conversation with a juror in direct defiance of the court, is an invasion of the other party's rights.

Whether or not the disposition of the treasurer of the plaintiff company to fraternize with jurors had any effect on the verdict rendered in this case, this court, of course, cannot say. Likewise, whether or not her interest in the corsage worn by a seated juror and her desire to purchase some which resulted in her introduction to the juror during deliberation sprang from improper motives or merely her aesthetic interest in flowers is immaterial under the law.

If litigants are to be permitted to contemptuously disregard the express admonitions of a court even though without malicious motive, courts would soon lose control over proceedings before it, and the faith of our people in our jury system and the administration of justice would not long be preserved.

It is, therefore, ordered, adjudged and decreed that the verdict hereinbefore rendered on the 11th day of June, 1952, is hereby set aside and held for naught and a new trial granted.